JUDGE GARDEPHE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A&E TELEVISION NETWORKS, LLC, a Delaware limited liability company; and D&D TELEVISION PRODUCTIONS, INC., a New York corporation, <br><br> Plaintiffs, <br><br> -against- <br><br> PIVOT POINT ENTERTAINMENT, LLC, a California limited liability company; DUANE CHAPMAN, an individual; and ALICE BARMORE-SMITH CHAPMAN, an individual, <br><br> Defendants. | 10 CIV 9422 <br><br> ___ CV ___ <br> 10 CIV 9422 (PGG) <br> ECF Case <br><br> INTERPLEADER COMPLAINT |



Plaintiffs A&E Television Networks, LLC and D&D Television Productions, Inc., by their undersigned attorneys, for their Interpleader Complaint, allege as follows:

1. This is an interpleader action brought pursuant to Fed. R. Civ. P. 22, 28 U.S.C. § 1332 and 28 U.S.C. § 1335 by virtue of the diversity of citizenship and by diversity of citizenship of the adverse claimants to cash, fees and royalties due and which will become due (collectively, the "Assets"), the value of which is in excess of $500. The Assets are in the custody or possession of plaintiffs.

**The Parties**

2. Plaintiff, A&E Television Networks, LLC ("AETN") is a limited liability company. Its members are corporations (Hearst Communications, Inc., Hearst Holdings, Inc., Hearst LT, Inc., Disney/ABC International Television, Inc., Cable LT

Holdings, Inc., and NBC-A&E Holdings, Inc.), each of which is organized and existing under the laws of the State of Delaware with a principal place of business in New York.

3. Plaintiff, D&D Television Productions, Inc. ("D&D") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York.

4. Upon information and belief, defendant Pivot Point Entertainment LLC ("Pivot Point") is a limited liability company whose members are natural persons who are citizens of the State of California.

5. Upon information and belief, defendant Duane Chapman ("Dog Chapman") is a citizen of the State of Hawaii.

6. Upon information and belief, defendant Beth Alice Barmore-Smith Chapman ("Beth Chapman") is a citizen of the State of Hawaii.

### Jurisdiction and Venue

7. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship.

8. The Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1335, as there is diversity between the adverse claimants to the Assets, the value of which is in excess of $500.

9. Pivot Point is subject to personal jurisdiction in this District because it consented to personal jurisdiction and venue in any federal or state court in the State of New York, County of New York, in Paragraph 9 of Amendment No. 3 to the Co-Executive Producer Agreement by and between Pivot Point, AETN and D&D that is at issue herein, dated as of December 19, 2005 (collectively, the Agreement and

Amendment No. 3 will be referred to as the "Pivot Point Agreement"), it transacted business in the State of New York, and it commenced an action in the State of New York concerning its claim to the Assets that is pending in the Supreme Court of the State of New York, County of New York.

10. Dog Chapman is subject to personal jurisdiction in this District because he consented to personal jurisdiction in the Agreement by and between Dog Chapman and D&D, dated as of December 13, 2005 (the "Dog Chapman Agreement").

11. Beth Chapman is subject to personal jurisdiction in this District because she consented to personal jurisdiction in the Agreement by and between Beth Chapman and D&D, dated as of December 13, 2005 (the "Beth Chapman Agreement").

12. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because: (i) Pivot Point consented to exclusive venue in this District pursuant to Paragraph 9 of the Pivot Point Agreement, and (ii) Dog and Beth Chapman each consented to exclusive venue in this District pursuant to the Dog Chapman and Beth Chapman Agreements. In addition, a substantial part of the events and omissions giving rise to the claims in this action occurred in this District.

**"Dog, The Bounty Hunter" Agreements**

13. After the first two seasons of the program, "Dog the Bounty Hunter" (the "Program"), Boris Krutonog ("Krutonog") and Hybrid Films, Inc. ("Hybrid") each formed special purpose corporate entities solely for purposes of producing the Program. Hybrid formed D&D "as a single purpose vehicle to produce a third production cycle" and additional cycles of the Program. Krutonog formed Pivot Point as a special purpose corporate entity.

14. Pivot Point and D&D entered into the Pivot Point Agreement. The Pivot Point Agreement expressly assigned all of Krutonog's and Hybrid's rights to Pivot Point and D&D, respectively; provided that it superseded prior agreements; applied New York law; and Pivot Point agreed to personal jurisdiction and venue in New York County, New York.

15. AETN is a party to the Pivot Point Agreement only with respect to accounting and paying Pivot Point a "royalty" based on net profits, if any, for (i) any DVD and other video distribution and (ii) any broadcasts of the Program on other networks.

16. Pursuant to the Pivot Point Agreement, Pivot Point agreed to provide services to the Program and receive fees and other payments for its services.

17. Dog Chapman entered into the Dog Chapman Agreement. Pursuant to it, Dog Chapman agreed to participate in and provide services for the Program and receive fees and other payments for his participation and services.

18. Beth Chapman entered into the Beth Chapman Agreement. Pursuant to it, Beth Chapman agreed to participate in and provide services for the Program and receive fees and other payments for her participation and services.

**The Chapmans' Claims**

19. On or about March 23, 2007, Dog and Beth Chapman commenced an administrative proceeding against Krutonog and Pivot Point before the California Labor Commissioner (the "California Labor Proceeding"). The Chapmans claimed Krutonog and Pivot Point had violated the California Talent Agencies Act ("TAA") (Sections 1700 et seq. of the California Labor Code) by, inter alia, acting as unlicensed

talent agents and unlawfully collecting "producer" fees in connection with the Program. In the California Labor Proceeding, the Chapmans sought an order declaring that a purported "exclusive rights agreement" between the Chapmans and Krutonog, as well as the Pivot Point Agreement, are illegal under the TAA, and declaring that any amounts due under the Pivot Point Agreement should be paid to the Chapmans, not to Krutonog or Pivot Point.

20. Under the TAA, the California Labor Commissioner has original and exclusive jurisdiction to determine whether (i) the Pivot Point Agreement is subject to the TAA, and, if not, (ii) which party is entitled to payment.

21. The California Labor Proceeding is <u>sub judice</u>.

22. By letter dated June 1, 2007, counsel for Dog and Beth Chapman wrote to AETN and D&D, among others. Counsel "demand[ed] that you immediately cease and desist paying any further sums to Boris Krutonog or Pivot Point Entertainment in connection with the Program. . . . We intend to hold you fully responsible for damages resulting to our clients from any future payments to these entities."

**Pivot Point's Demand and the New York Action**

23. As a result of the Chapmans' demand and the California Proceeding, AETN and D&D informed Krutonog and Pivot Point that they would hold, but not pay, amounts due and which would become due under the Pivot Point Agreement pending determination of the California Labor Proceeding.

24. In 2007 and 2008, Krutonog and Pivot Point demanded that AETN and D&D pay to them all amounts due and which were to become due under the Pivot Point Agreement.

25. Pivot Point and its managing agent, Krutonog, also threatened to take and have taken further legal action against plaintiffs because plaintiffs have ceased making payments to Pivot Point pending determination by the California Labor Commissioner of the validity of the Pivot Point Agreement and rights of each of the adverse claimants hereto to the Assets.

26. On or about May 19, 2008, Krutonog and Pivot Point commenced an action in New York entitled <u>Pivot Point Entertainment, LLC and Boris Krutonog v. Hybrid Films, Inc., D&D Television Productions, Inc., A&E Television Networks and David Houts</u>, Index No. 601516/2008 (N.Y. Sup. Ct.) (the "New York Action"). In the New York Action, Krutonog and Pivot Point seek damages for breach of the Pivot Point Agreement, damages for promissory fraud and a declaration that the Pivot Point Agreement is valid and they are owed all amounts due thereunder.

27. In June 2008, the defendants in the New York Action moved to dismiss the New York action.

28. Pursuant to New York Civil Practice Law and Rule 3214, all disclosure was automatically stayed pending determination of defendants' motion.

29. By decision and order, dated June 8, 2010, the Court denied the motion to dismiss the claim for breach of the Pivot Point Agreement, but (i) dismissed all claims by Krutonog, (ii) dismissed all claims against Hybrid and Houts, and (iii) dismissed the promissory estoppel and declaratory relief claims.

**Interpleader I**

30. On or about July 7, 2010, AETN and D&D commenced an interpleader action, pursuant to 28 U.S.C. § 1335, in the United States District Court for

the Central District of California, entitled <u>A&E Television Networks, LLC et al. v. Pivot Point Entertainment, LLC et al.</u>, 2:10-CV-04978 (JST) ("Interpleader I Action").

31. In the Interpleader I Action, AETN and D&D moved for interpleader relief seeking, among other things, the right to deposit the Assets into the registry of the Court and a discharge from liability.

32. The claimants, Pivot Point and Krutonog, opposed the application for interpleader relief and moved to dismiss. Their grounds for dismissal included abstention, laches, bad faith, lack of subject matter jurisdiction and improper venue.

33. By decision and order dated December 10, 2010, the Court (Hon. Josephine S. Tucker) granted Pivot Point's motion to dismiss solely on the ground of improper venue under Fed. R. Civ. P. 12(b)(3) and, as a result, dismissed AETN's and D&D's motion for interpleader relief.

34. In the New York Action, Pivot Point has moved for summary judgment on liability, alleging that because AETN and D&D claimed in the Interpleader I Action that they have no interest in the Assets, there allegedly is no dispute concerning their breach of the Pivot Point Agreement.

35. AETN and D&D have opposed summary judgment on the grounds that there are (i) issues of law concerning whether the Pivot Point Agreement is valid which only may be determined by the California Labor Commissioner, and (ii) disputed issues of material fact.

36. Pivot Point's motion is <u>sub judice</u>.

### The Amount in Controversy

37.  Pursuant to the Pivot Point Agreement, AETN and D&D owe in excess of $2 million in Assets to Pivot Point or the Chapmans, which are due and will become due.

### AETN and D&D Are Holding the Assets

38.  AETN and D&D are holding the Assets due. Those Assets consist of dollars.

### Conflicting Demands

39.  Neither AETN nor D&D has any interest in the Assets they are holding or will become due under the Agreement.

40.  The Chapmans, on the one hand, and Pivot Point, on the other hand, have asserted conflicting claims against plaintiffs with respect to all or part of the Assets.

41.  By reason of the conflicting claims and instructions, plaintiffs do not know and cannot know which of the defendants is the proper person to give plaintiffs directions with respect to all or part of the Assets.

WHEREFORE, plaintiffs pray for interpleader relief granting judgment that:

(a)  Each of the defendants be required to interplead and settle among themselves their respective rights to the Assets;

(b)  Each of the defendants, and each of their respective officers, agents, servants, employees, attorneys or persons in active concert or participation with any of them be enjoined and restrained from (i) making any claim against plaintiffs to turn over the Assets, and (ii) instituting or prosecuting any action or proceeding against

plaintiffs in any court for recovery of the Assets;

      (c)    Plaintiffs be permitted to deposit in the registry of the Court to be held in a demand deposit account pending further order of this Court: (i) amounts due under the Pivot Point Agreement, and (ii) amounts that will become due under the Pivot Point Agreement upon the submission to the Clerk of the Court and service upon the defendants of an affirmation by plaintiffs accounting for such additional amounts and identifying them as due and owing under the Pivot Point Agreement;

      (d)    Upon such deposit pursuant to (c)(i) above and continuing deposit under (c)(ii) above, plaintiffs be discharged from any and all liability to transfer, assign or turn over the Assets; and

      (e)    Plaintiffs be awarded such other and further relief as this Court may deem fair and equitable, including their costs, expenses and attorneys' fees.

Dated: New York, New York
       December 17, 2010

                        MILLER & WRUBEL P.C.

                        */s/ Martin D. Edel*
                        Martin D. Edel
                        Adam J. Safer
                        570 Lexington Avenue
                        New York, New York 10022
                        (212) 336-3500
                        Facsimile: (212) 336-3555

                        -and-

                        CAMERON STRACHER, ESQ.
                        One Park Avenue, 3rd Fl.
                        New York, New York 10013
                        (212) 743-6513

                        *Attorneys for Plaintiffs*