USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/20/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
A&E TELEVISION NETWORKS, LLC, et al.,   :

          Plaintiffs,   :

      -v.-   :

PIVOT POINT ENTERTAINMENT, LLC, et al.,   :

          Defendants.   :
----------------------------------------------------------------X

MEMORANDUM AND ORDER

10 Civ. 9422 (PGG) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

## I. INTRODUCTION

Before the Court in this interpleader action are letters from both parties and non-parties in connection with the request of Defendants Duane "Dog" Chapman and Beth Alice Barmore-Smith Chapman (the "Chapmans") seeking to compel Defendant Pivot Point Entertainment, LLC ("Pivot Point") to produce a confidential settlement agreement (the "Agreement"), and all drafts thereof, entered into by the parties in the action <u>Krutonog v. Akin, Gump, Strauss, Hauer & Feld, et al.</u> (the "Krutonog Action") filed in the Superior Court of California for the County of Los Angeles. The Chapmans, Pivot Point, and Plaintiffs A&E Television Networks, LLC ("A&E") and D&D Television Productions, Inc. ("D&D") have submitted to the Court a joint letter dated December 6, 2011 outlining their respective arguments. (Letter from Counsel for the Chapmans, Pivot Point, A&E, and D&D, dated Dec. 6, 2011 ("Joint Letter")).[1] The Court has also received two letters from three non-parties who entered into the Agreement in the Krutonog Action opposing the Chapmans' application. (Letter from Counsel for Non-Parties Myman Greenspan

---

[1] According to the Joint Letter, Plaintiffs A&E and D&D have also sought to obtain the Agreement through discovery. (Joint Letter at 7). To the extent that Plaintiffs join in the Chapmans' request, the application is denied.

1

USDC SDNY
DATE SCANNED 12/20/11

Fineman Fox Rosenberg & Light LLP ("Myman Greenspan") and Leslie B. Abell ("Abell"), dated Dec. 6, 2011 ("Myman Letter"); Letter from Counsel for Non-Party Akin, Gump, Strauss, Hauer & Feld, LLP ("Akin Gump"), dated Dec. 6, 2011 ("Akin Gump Letter")).[2] For the reasons set forth below, the Chapmans' request is denied.

## II. DISCUSSION

As a threshold matter, the Chapmans have not established that the Agreement is relevant to this action under applicable law. In the Krutonog Action, Boris Krutonog, who is a principal of Pivot Point, sued his former law firms for legal malpractice and breach of fiduciary duty. Krutonog alleged that Myman Greenspan, Abell, and Akin Gump failed to advise him of a potential violation of the California Talent Agencies Act, which jeopardized his right to receive compensation under a Co-Executive Producer Agreement for the television show "Dog the Bounty Hunter." (Joint Letter at 1; Myman Letter at 1). In addition, Krutonog alleged that his counsel had failed to return legal files to him, there was a conflict of interest with respect to counsel's representation of Krutonog and the Chapmans, and counsel had executed a declaration adverse to Krutonog's interests. (Myman Letter at 2). Thus, the Krutonog Action involved a myriad of allegations, many of which having nothing to do with the issues raised by this interpleader action.

Here, the Chapmans, who were neither parties to the Krutonog Action nor the Agreement, assert that the unpaid compensation at issue in the Krutonog Action is "in substantial part the same monies that A&E has deposited with the Court in this Interpleader Action" because both actions involve the Co-Executive Producer Agreement. (Joint Letter at 3). As such, the

---

[2]  As an alternative means to obtain the Agreement, the Chapmans have also served subpoenas on the law firms who represented the parties in the Krutonog Action, all of whom have refused to produce the Agreement. (Joint Letter at 2).

2

Chapmans argue, any money paid to Krutonog in settlement of his claims mitigates his and, by extension, Pivot Point's alleged losses under the Co-Executive Producer Agreement and should offset Pivot Point's recovery of damages here. (Id.). In addition, the Chapmans contend that the Agreement is relevant because it supports their theory that Krutonog was a de facto talent agent for the Chapmans, which entitles the Chapmans to recover the interpleaded assets deposited by A&E with the Court. (Id.).

While the Chapmans cite to several cases for the proposition that settlement agreements can be discoverable and do not require a heightened showing of relevance in light of Rule 408 of the Federal Rules of Evidence, see, e.g., Small v. Nobel Biocare USA, LLC, No. 06 Civ. 0683 (RJH) (JLC), 2011 WL 3055357, at *1-2 (S.D.N.Y. July 19, 2011); ABF Capital Management v. Askin Capital, Nos. 96 Civ. 2978 (RWS), 95 Civ. 8905 (RWS), 97 Civ. 1856 (RWS), 97 Civ. 4335 (RWS), 98 Civ. 6178 (RWS), 98 Civ. 7494 (TSZ), 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000), and it is true that Rule 408 applies to admissibility not discoverability of settlement agreements, see, e.g., Conopco, Inc. v. Wein, No. 05 Civ. 9899 (RCC) (THK), 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007), they do not cite to any authority to support the notion that Krutonog's monetary settlement in a legal malpractice lawsuit should offset his potential recovery in an interpleader action. The Chapmans do not explain why or how money paid to settle the Krutonog Action should serve to offset Pivot Point's, or enhance the Chapmans', entitlement to the interpleaded "stake." The mere fact that both lawsuits involve the same agreement—the Co-Executive Producer Agreement, to which the Chapmans are not parties (Joint Letter at 4)—does not, by itself, mean that recovery in one lawsuit should mitigate recovery in another. Recovery in either lawsuit by Krutonog, who is not a party in this action, or Pivot Point, who was not a party in the Krutonog Action, would not violate the rule against

3

"double recovery for the same injury," Shepherd v. Law Offices of Cohen & Slamowitz, LLP, 668 F. Supp. 2d 579, 582 (S.D.N.Y. 2009), as the injuries alleged in both lawsuits—legal malpractice and breach of fiduciary duty on the one hand, and conflicting claims to the interpleaded assets on the other—are entirely different.

In addition, because it is not relevant under federal law, the Agreement cannot pass the heightened relevance standard required under California law, which likely governs the Agreement. Pivot Point, Myman Greenspan, Abell, and Akin Gump state that the Agreement is expressly governed by California law, a point which the Chapmans, A&E, and D&D do not dispute. (Joint Letter at 6; Myman Letter at 3; Akin Gump Letter at 2). "[G]iven the private nature of a confidential settlement of a lawsuit, the burden rests on the proponents of discovery of this information . . . to justify compelling production of this material. They must do more than show the possibility it may lead to relevant information. Instead they must show a compelling and opposing state interest." Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court, 58 Cal. Rptr. 2d 791, 794-95 (Cal. Ct. App. 1996). The Chapmans have made no attempt to articulate a "compelling and opposing state interest[,]" or for that matter, asserted any argument under California law, to justify disclosing a confidential settlement agreement.

Even assuming, arguendo, that the Chapmans were able to demonstrate relevance under California law or federal law (were California law not to apply to the Agreement), they have failed to establish that neither the Agreement nor its drafts are not privileged and thus discoverable. The Agreement was negotiated "under the auspices of a California mediation process" (Akin Gump Letter at 3), which prohibits disclosure of drafts of a settlement agreement. California's mediation confidentiality statute provides, in relevant part, that absent an express statutory exception, "[n]o writing . . . that is prepared for the purpose of, in the course of, or

4

pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given." Rojas v. Superior Court, 93 P.3d 260, 265 (Cal. 2004) (quoting Cal. Evid. Code § 1119(b)). The Chapmans have not asserted any argument to overcome the California Evidentiary Code's presumption against disclosure of drafts of the Agreement.[3]

As for the Agreement itself, California law permits disclosure only if certain conditions are satisfied, including, for example, if the "agreement provides that it is admissible or subject to disclosure, or words to that effect." See Cal. Evid. Code § 1123(a). Here, however, the Agreement contains a strict confidentiality provision. (Akin Gump Letter at 2). And while an in camera review of the Agreement might determine whether other conditions for disclosure have been met, see, e.g., Cassel v. Superior Court, 244 P.3d 1080, 1089 (Cal. 2011) (quoting Cal. Evid. Code § 1123(b)) (disclosure of written settlement agreement permitted if "'agreement provides that it is enforceable or binding or words to that effect'"), such a review is unnecessary at this time. The California Superior Court in the Krutonog Action entered a sealing order to protect the confidentiality of the Agreement. (Joint Letter at 6; Akin Gump Letter at 2). Pursuant to Rule 2.551(h)(1) of the California Rules of Court, "[a] sealed record must not be unsealed except on order of the court." The record before the Court does not indicate that the Chapmans have obtained any such order. Accordingly, the Chapmans have not established that the Agreement is discoverable.

---

[3] Separately, I note that the drafts of the Agreement are not discoverable because there is no indication that they were ever disclosed to third parties and thus they are protected by both the attorney-client privilege and the work product doctrine. See, e.g., N.V. Organon v. Elan Pharm., Inc., No. 99 Civ. 11674 (JGK) (RLE), 2000 WL 520622, at *2 (S.D.N.Y. May 1, 2000).

### III.  CONCLUSION

In sum, the Chapmans' request is denied. Any application to unseal the Agreement, and subsequently to compel its disclosure upon a showing of relevance under the applicable law, is appropriately made by the Chapmans in Superior Court in California.

**SO ORDERED.**

Dated: New York, New York
December 20, 2011

                                                              _____
                                                              JAMES L. COTT
                                                              United States Magistrate Judge

**Copies of this Memorandum and Order have been sent by ECF to all counsel.**